MANCOURT-WINTERS COAL CO. v. OHIO & MICHIGAN
COAL CO.

1. SALES—CONTRACTS—LEVER ACT REGULATING PRICE OF COAL.
    A contract for the sale of coal, entered into before the
        passage of the Lever act (40 U. S. Stat. Chap. 53, p.
        276) authorizing the president of the United States to
        fix the price of coal, was not affected thereby.
        217 Mich.—29.

2. SAME—VOID CONTRACT—RIGHTS OF PARTIES—SET-OFF AND RE-COUPMENT.

Where the parties to a contract for the sale of coal know-ingly increased the price to be paid for same in viola-tion of an order of the president under the Lever act, they were both *in pari delicto* and the purchaser may not set off such illegal charges paid by it thereunder against the balance owing by it under the original. con-tract, since the law will not aid either party to an illegal agreement, but leaves the parties where it finds them.

3. SAME—BALANCE DUE—DIRECTED VERDICT.

The subsequent agreement for increased price being void, the trial court properly directed a verdict for plaintiff for the balance due at the original contract price; the contract being executed except as to the deliveries un-paid for.

Error to Wayne; Webster (Arthur), J.. Submitted October 20, 1921. (Docket No. 156.) Decided March 30, 1922.

Assumpsit by the Mancourt-Winters Coal Company against the Ohio & Michigan Coal Company for goods sold and delivered. Judgment for plaintiff on a di-rected verdict. Defendant brings error. Affirmed.

*Oxtoby, Robison & Hull,* for appellant.

*Walters & Hicks,* for appellee.

BIRD, J. Both of these parties are dealers in coal and have their home offices in the city of Detroit. On February 17, 1917, plaintiff entered into a written contract with defendant to sell it 60,000 tons of West Virginia bituminous coal at $2.75 a ton, deliveries to be made in one year from April 1, 1917, at approxi-mately 5,000 tons a month. There were other stipu-lations in the contract, but they are not material to this controversy. Soon after the execution of the contract the war came on and later the Lever act was

passed (40 U. S. Stat. chap. 53, p. 276), authorizing the president to fix the price of coal by executive order. On August 21st the president issued an order fixing the price of West Virginia bituminous coal at $2 a ton at the mine and fixing the jobbers' commission at 15 cents a ton. With reference to contracts then in force the Lever act provided (§ 25):

"The maximum prices so fixed and published shall not be construed as invalidating any contract in which prices are fixed, made in good faith prior to the establishment and publication of maximum prices by the commission."

It was agreed by both parties that their contract was not affected by the president's order of August 21st, inasmuch as it was made before the war commenced and before any order was made in pursuance of the act. On October 27, 1917, the president promulgated another order adding 45 cents a ton to the price fixed in the initial order. This made the maximum price $2.45 a ton. Upon the issuance of this order the parties had some talk as to whether the 45-cent increase would apply to their contract. After giving the matter some consideration, they concluded it was applicable, and commencing with November 1, 1917, the defendant paid to plaintiff the additional 45 cents a ton up to March, 1918, the last month of the contract. Then, by request of defendant, the contract was extended to include the month of April, 1918, in which month about 6,000 tons of coal were delivered under the contract.

When the first of May, 1918, was reached defendant then owed plaintiff for the coal delivered in March and April, 1918. All the previous deliveries had been paid for. Plaintiff then demanded payment for the March and April deliveries. The defendant says "no, the demand made by you for the 45 cents additional was an illegal demand and in violation of the presi-

dent's order, and we will set off these illegal charges which we have heretofore paid against the coal delivered to us in March and April." Plaintiff was not content with this solution. It sued defendant and at the trial, after the testimony was closed, both sides requested the court for a directed verdict. After considering the matter the trial court directed a verdict for the plaintiff for the March and April coal at the contract price of $2.75 a ton. Defendant now insists in this court that the trial court's view of the law was not the proper one.

In directing a verdict for plaintiff the trial court held in substance:

(1) That inasmuch as the contract of the parties was made before the Lever act was passed it was not affected by it.

(2) That the agreement of the parties that the 45-cent order of the president applied to the contract was an illegal agreement and, therefore, defendant could not use the sum it had paid in pursuance of it as a set-off to plaintiff's claim.

(3) That inasmuch as the 45-cent agreement between the parties was an illegal one, both parties were *in pari delicto*, and that no recovery for the March and April coal could be had beyond the contract price, namely, $2.75 a ton, and a judgment for this amount was given to the plaintiff.

1. The trial court held the Lever act constitutional and that the act did not apply to the original contract made by the parties to this suit.

2. The parties had a contract for $2.75 a ton while the president's order fixed the price at $2, and afterwards raised it to $2.45 a ton. Both parties knew that their original contract was not affected by the president's order because it was made before the order was made. They must therefore have known that to refix the price after the order was made at a price in excess of that fixed in the order was a violation of the

order.   With this knowledge both parties agreed to the new price of $3.20, and this price was paid for most of the coal included in the contract.   This situation would appear to support the trial court's conclusion that both parties were *in pari delicto*.

But counsel argue that the purpose of the Lever act was to protect the purchaser against the seller and that the law is not penal as to the purchaser.   The penal provision of section 25 of the act is as follows:

"Whoever shall, with knowledge that the prices of any such commodity have been fixed as herein provided, ask, demand or receive a higher price, or whoever shall, with knowledge that the regulations have been prescribed as herein provided, violate or refuse to conform to any of the same, shall, upon conviction, be punished by fine of not more than five thousand dollars, or by imprisonment for not more than two years, or both.   Each independent transaction shall constitute a separate offense."

Undoubtedly it is true that the inhibition is aimed more particularly against the seller, but it will also be noted that after the statute deals with the seller it then says:

"or whoever shall, with knowledge that the regulations have been prescribed, as herein provided, violate," etc.

This would indicate that a dealer who deliberately entered into a contract, knowing it to be in violation of the act, would incur the penalty contained in the act.   The idea back of the act was to prevent dealers from trafficking in coal at prices in excess of those fixed by executive order.   But if it should be said that defendant's construction is the proper one a dealer could not deliberately enter into a contract which it knew the law forbid the other party to make without both of them being *in pari delicto* as to the execution of the contract.   To say the least, defend-

ant in knowingly entering into an illegal contract would be aiding and abetting a violation of law.

Counsel discuss the character of the account and assert that it was an open one and that defendant was entitled to recover the balance due thereon. They also discuss other questions, but we think ' they are not material under our view of the case. Our view is that the contract adding 45 cents a ton to the consideration made it an illegal contract. That both parties were *in pari delicto*. It is also our view that the contract was executed except as to the deliveries in March and April, and as to those the trial court properly allowed a recovery at the contract price of $2.75. The court, undoubtedly, had a right to enforce the unexecuted part of the contract in accordance with the original contract because that was a legal one. 9 Cyc. p. 564.

In support of these conclusions it is said in 6 R. C. L. p. 826:

"In cases in which the parties are *in pari delicto* the courts not only refuse to enforce rights arising out of an executory illegal contract, but even where the contract has been executed in whole or *in part* by one of the parties, as for instance by the payment of money, the courts, notwithstanding the fact that the other has received the benefit thereof without giving anything in return, generally refuse to give relief, unless, as will be seen, the former repudiates the contract before the execution of the unlawful purpose."

In the early case of *Bagg* v. *Jerome,* 7 Mich. 157, it was said:

"At common law all contracts in violation of law are void. The law, in such cases, will not aid either party, but leaves them to reap the reward of their own folly. Hence, if the contract is executory it will not enforce it, or give damages for a non-performance; and if executed it will not undo what the parties themselves have done, by divesting the title that has passed."

To the same effect are the cases of *Walhier* v. *Weber*, 142 Mich. 322, and *Benson* v. *Bawden*, 149 Mich. 584 (13 L. R. A. [N. S.] 721).

In the last case cited it is said:

"It is well settled that the law will not aid either party to an illegal agreement. It leaves the parties where it finds them. Neither a court of law or equity will aid the one in enforcing it, or give damages for the breach of it, or set it aside at the suit of the other, or, when the agreement has been executed in whole or in part by the payment of money or the transfer of other property, lend its aid to recover it back."

Had we not determined that both parties were in equal wrong in making the contract the other questions which counsel have discussed would be material, but our view of the main question renders it unnecessary to consider them.

We are impressed that the trial court reached the right conclusion and the judgment will be affirmed.

WIEST, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred. FELLOWS, C. J., did not sit.

The late Justice STONE took no part in this decision.