[No. 21855.   Department Two.   January 10, 1930.]

WILLIAM C. MILLER et al., *Appellants*, v. WILLIAM PAUL et al., *Respondents*.[1]

*Guy O. Shumate,* for appellant.

*Hall & LaLonde,* for respondents.

MILLARD, J.—This action was commenced to compel the defendants to convey to the plaintiffs a one-half interest in an apartment house property, and to require the defendants to make an accounting of their operation of the apartment house. Defendants, by answer, pleaded the contracts upon which they assumed

[1]Reported in 283 Pac. 699.

the plaintiffs based their cause of action. By amended reply, the plaintiffs admitted the parties entered into the contracts. Defendants' demurrer to plaintiffs' complaint, as altered and amended by plaintiffs' reply, was sustained. An order of dismissal was entered, plaintiffs electing to stand upon their complaint. Plaintiffs appealed.

By their complaint, the appellants alleged that, on April 27, 1926, appellant husband and respondent husband entered into a written contract providing, substantially, as follows:

Paul was to convey to Miller two building lots in Vancouver, Washington. Miller was to build thereon an apartment house not to cost more than fifty-five thousand dollars. Miller was to finance the construction of and furnishing of the building by negotiating a first mortgage on the land and building, and to supply any additional finances needed by negotiating a second mortgage. Miller agreed to reconvey a one-half interest in the property to Paul as soon as the first mortgage on the property was placed of record. Appellants further allege that deeds passed between the parties as agreed. The first mortgage was placed upon the property, and Miller complied with the terms of the contract by building the apartment house, incurring a construction indebtedness of $51,474.68, all of which he had paid on December 3, 1926, except $16,955. On December 3, 1926, the parties made a second written agreement, modifying the original contract in the following particulars: Paul, by use of the real property as security, agreed to pay all outstanding indebtedness against the property amounting to $16,955. In consideration of Paul's agreement to pay the outstanding indebtedness, Miller deposited in a bank in escrow a quitclaim deed conveying his one-half interest in the property to Paul upon the following conditions:

"That if the plaintiffs, on or before six months from December 3, 1926, paid to defendant, William Paul, all the money that he may have advanced or for which he may have obligated himself for the construction of said apartment house in excess of the contract price of construction, to wit, $55,000, and by the furnishing of extras not contemplated by the original plans and specifications, if any are furnished, and pay him one-half of the income of said apartment house which may have been used for the purpose of paying the remaining balance due, together with interest thereon at the rate of 7% per annum; and further assume and agree to pay any indebtedness upon the property, placed thereon for paying the balance due for construction thereof, then the said quitclaim deed shall be returned to the grantors, plaintiffs herein, and held for naught; otherwise said deed was to be delivered to the said defendant, William Paul, and become absolute at the expiration of six months."

Appellants further alleged that the total cost of construction was $51,474.68; that Paul obligated himself to pay or paid the remaining balance of $16,955 to be paid on account of the construction of the apartment house which was not in excess of the contract price of the apartment house; that, in accord with the terms of the agreement, Miller, to secure the return to him of that deed, was not obligated to pay Paul in any sum, as Paul did not pay or obligate himself to pay any money in excess of the contract price of construction of the apartment house. That, notwithstanding the foregoing facts, the bank, after the expiration of six months, wrongfully delivered the quitclaim deed to Paul and the deed was placed of record July 19, 1927. That, by the second agreement, under which Paul was given full control and management of the property, Paul was required to account in detail to the appellants for all transactions while engaged in managing the apartment property, which accounting has not been

made; that appellants, by reason of the fact that they are not indebted to the respondents in any sum under the second agreement, are rightfully the owners of an undivided one-half interest in the apartment property, and are rightfully entitled to one-half of the income therefrom, pray cancellation of the quitclaim deed, conveyance by respondents to appellants of an undivided one-half interest in the property, and an accounting of the income received from, and expenditures incurred in, the operation of the apartment house since December 3, 1926.

Respondents admitted by their answer entering into two contracts with appellants, and set out in their answer the two agreements dated April 27, 1926, and December 3, 1926. Our disposition of this case obviates the necessity of reciting the other allegations of the answer, which are, substantially, the respondents' view of the terms of the two contracts, with which, respondents allege, the appellants did not comply.

By amended reply, the appellants admitted that the two agreements made a part of respondents' answer are the contracts entered into by the respondents and appellants, but deny all other allegations of the answer not coinciding with the allegations of the complaint.

Thereupon the respondents demurred to the complaint as altered and amended by the plaintiffs' reply to the answer of the defendants, for the reason that the same did not state facts sufficient to constitute a cause of action.

Counsel representing the appellants on their appeal did not represent the appellants in the trial court.

Appellants contend that the respondents, by filing their demurrer, must be deemed to have waived and abandoned their answer, hence nothing was before the trial court upon which to base a decision upon the demurrer; that:

"It left nothing but the allegations of plaintiffs' complaint for the court to consider. That would, of course, eliminate the contracts, Exhibits 'A' and 'B' which were attached to the defendants' answer."

There is no magic in the name "demurrer." The cause is before us as upon a motion for judgment on the pleadings.

"The law with respect to a motion for judgment on the pleadings which is generally approved by the courts is well stated in 31 Cyc. 606, as follows:

" 'A motion for judgment upon the pleadings is in the nature of a demurrer. It is in substance both a motion and a demurrer. It is a demurrer for the reason that it attacks the sufficiency of the pleadings; and it is a motion for the reason that it is an application for an order for judgment. Like a demurrer it admits the truth of all well pleaded facts in the pleadings of the opposing party, it may be carried back and sustained against a prior pleading of the party making the motion, and the court will consider the whole record and give judgment for the party who, on the whole, appears entitled to it.'

"Under this rule, when the motion is made the court will consider the whole record and give judgment for the party who appears entitled thereto. The party making the motion for the purpose thereof admits not only the allegations of his adversary, but also the untruth of his own allegations that have been denied." *Deaver v. Patterson,* 119 Wash. 375, 205 Pac. 1044.

"A motion for judgment on the pleadings searches the whole record; it may be carried back and sustained against a prior pleading of the party making the motion, and a judgment may be rendered for the party, either the movant or his adversary, entitled thereto as the record then stands. The motion for judgment presents two questions to the court in the following order: (1) Is there any issue of material fact? and, if not, (2) which party is entitled to judgment? In determining the second question, it is immaterial which party presents the motion; but on the first question, the moving party is at this disadvantage: He is deemed not only to

admit, for the purposes of the motion, the truth of every fact well pleaded, but to admit the untruth of his own allegations which have been denied. On the first question, the adverse party has this advantage: His pleadings will be construed so as to bring to his aid every reasonable intendment in favor of the sufficiency thereof. Thus the answer to the first question, and therefore, whether or not the court reaches the second question, may depend somewhat upon which party makes the motion." Bancroft's Code Pleading, vol. 1, p. 934, § 646.

Let us apply these rules. We note that the appellants have not, either in the complaint or reply, alleged compliance, on their part, with the terms of the two contracts. All of the allegations of the answer may be disregarded except those setting out the two contracts. The substance of the complaint is that the parties entered into two contracts, which are not set out in the complaint. The appellants pleaded their conception of the terms of the contracts and that respondents did not comply therewith. The two contracts are made a part of respondents' answer and are admitted by appellants' reply to be the contracts upon which they base their cause of action. With the record in this condition, keeping in mind the failure of the appellants to plead compliance with the terms of the two contracts upon which they must rely for relief, is any issue of material fact presented?

The allegation of the appellants that under the second contract they were not required, as a condition precedent to the return of the quitclaim deed to them, to pay to the respondents any sum, is the pleading of a conclusion; it is appellants' interpretation of the terms of the second agreement. The two contracts read as follows:

"THIS MEMORANDUM executed this 27th day of April, 1926, by and between William Paul, as party of the

first part, and William C. Miller, as party of the second part,

"WITNESSETH:

"That, whereas, the party of the first part is owner of a lot on the southwest corner of 12th & C streets in the city of Vancouver, Clark county, and is desirous of having erected thereon an apartment house; and,

"Whereas, party of the second part is willing to undertake the construction of a suitable apartment house and to finance the same, for and in consideration of the agreements hereinafter set out, it is therefore understood and agreed:

"That the said party of the first part will convey by good and sufficient warranty deed, together with abstract showing merchantable title, to the said William C. Miller, and to any one else whom he may direct, the said lot heretofore mentioned, and the said William C. Miller agrees to construct thereon an apartment house in accordance with the tentative plan already submitted and in particular in accordance with the plans and specifications to be hereafter accepted by both parties for the sum of fifty-five thousand dollars ($55,000) and to finance the construction of the said building by negotiating a first mortgage loan on the said lot and building and by furnishing such additional finances as may be needed by negotiating a second mortgage loan, both of said mortgages to be amortized in such a way that the income from the said building as contemplated, allowing a safe margin for emergencies, will meet the payments required under the said mortgages.

"Party of the second part further agrees that at the time said deed is executed to execute a reconveyance of a one-half (½) interest in the said lot by himself, or by such other parties as he may have designated that the original conveyance shall be made to, to the party of the first part, which said deed shall be held in escrow until the first mortgage has been made of record, and, if necessary, until the second mortgage has been fully negotiated.

"Party of the second part agrees to undertake all supervision of the construction of the said building and to complete the same in detail; and, if subse-

quently agreed by the parties hereto, to finance by means of a second mortgage such additional sum as may be necessary to furnish the apartments in the said building with beds, electric ranges, electrical fixtures, shades, kitchen linoleums, stair and hallway runners, etc.

"The purpose and intent of this agreement is to so arrange the title to the said property that the said party of the second part and his associates may execute good and sufficient mortgages to accomplish the purposes herein set out and thereafter a reconveyance of a one-half (½) interest to the said party of the first part so that the said party of the first part will not be personally bound under the said mortgages.

"In consideration of the agreements and work to be performed by the said party of the second part, he and such associates as he may direct are to hold and have as and for themselves a one-half (½) interest in the said property.

"In Witness Whereof, the parties hereto have hereunto set their hands, in duplicate, the day and date in this memorandum first above written."

"Know All Men by These Presents: That William Paul, hereinafter called the party of the first part, and Miller Brothers, Inc., a corporation organized under the laws of the state of Oregon, and William C. Miller and Anna M. Miller, husband and wife, hereinafter called the parties of the second part, for and in consideration of their mutual promises heretofore and herein entered into, do hereby agree as follows, to wit:

"That, whereas, the said William C. Miller heretofore entered into an agreement with the party of the first part, termed a 'memorandum of proposal,' which said agreement was dated the 27th day of April, 1926, and was relative to the construction of an apartment house on the property hereinafter described, which agreement is hereby made a part hereof; and

"Whereas, by the said agreement, the said William C. Miller was to construct the said apartment house on those certain lots of land situated in the county of Clark, state of Washington, and particularly described as follows, to wit:

"Lots numbered one (1) and two (2) in block num-

bered forty-six (46) in that part of the city of Vancouver, Washington, lying east of Main street and south of 19th street, as laid off and platted by Levi Farnsworth,''

at a certain sum stipulated therein, and to fully finance the same and,

''Whereas, there still remains to be paid for the construction of the said building the approximate sum of sixteen thousand eight hundred fifty-one and 49/100 dollars ($16,851.49);

''Now, THEREFORE, in consideration of the said party of the first part obtaining sufficient finance by the use of the said property as security, or otherwise, and paying all of the said claims now outstanding against the said property, and in addition thereto any sums whatsoever necessary for the construction, repair, maintenance, operation, taxes, insurance, payments on indebtedness or any sum for any other purpose reasonably necessary for the preservation and operation of the said building, the said parties of the second part agree to deposit in the American Security Bank of Vancouver, Washington, in escrow, a quitclaim deed conveying all of the right, title and interest of the said William C. Miller and Anna M. Miller, husband and wife, the same being an undivided one-half (½) interest, to the said party of the first part in and to the said tract of land hereinabove described, conditioned, however, as hereinafter set out.

''Now, if the said parties of the second part, or any one of them, shall on or before six months from the date hereof have paid to the said party of the first part all the money, or moneys, that he may have advanced, or for which he may have obligated himself, for the construction of the said building in excess of the contract price of construction as hereinabove set out, and as modified, by the furnishing of extras not contemplated or covered by the original plans and specifications, if any such extras have been furnished, and shall pay to him one-half (½) of all the income of the said building which may have been used to that date for the said purpose, together with interest thereon at the rate of seven per cent (7%) per annum, or at

the rate paid by him and payable at such time, and shall further assume and agree to pay any indebtedness upon the property placed thereon for that purpose, then the quitclaim deed above referred to shall be returned to the grantors and held for naught, otherwise it shall be delivered by the said American Security Bank to the said party of the first part and become absolute.

"It is further understood that all of the income from the said property may be hypothecated for the purpose of paying all obligations, both for the construction and operation of the said building, as hereinabove set out, including attorneys' fees.

"It is further agreed that the parties of the second part, as a condition precedent to the return of the quitclaim deed as hereinabove mentioned, and previous to the expiration of the six months' period hereinabove provided for, shall give credit for their proper proportion of all expenditures made by the party of the first part for all obligations, except those arising for the construction of the said building in advance of the contract price as modified, and if the same have been advanced by the said party of the first part from other sources, then to repay their proper proportion thereof, together with interest at the rate as aforesaid, and shall assume and agree to pay all obligations then outstanding for any of the said purposes, with the exception as in this paragraph set out.

"As a further condition for the return of the said quitclaim deed, and previous to the expiration of the said six months' period, it is further agreed that the parties of the second part shall furnish the party of the first part with a detailed account and a copy of the original plans and specifications of the said building, which detailed account shall set out the disbursements of all moneys obtained by the parties of the second part, or any of them, as the proceeds of the first mortgage upon the said tract of land, showing the dates and to whom and for what purposes said moneys have been paid, and if it shall be justly determined that Miller Brothers, Inc., have an amount due them for the construction of the said building within said contract price as modified as hereinbefore set out, then the

party of the first part shall execute a mortgage against the said property in favor of the said Miller Brothers, Inc., and for said amount to be paid, with interest at the rate aforesaid, out of the income of the said building after the payments on all other obligations have been met, if any of such income remains unused.

"This claim shall be allowed and paid as here set out when determined whether the option to redeem provided herein shall be exercised or not.

"It is further agreed that the party of the first part shall have full power to alter any agreements heretofore entered into by any of the parties of the second part for the purpose of financing the said building and to pay mortgages and indebtedness and reincumber the said property, if necessary, as fully as though he were the sole owner thereof and that he shall have full control of the management, operation and income of the said building and that he shall, in detail, account for all of his transactions to the parties of the second part in case the option to redeem hereunder shall be exercised.

"Time is of the essence of this agreement and it is understood that this agreement shall bind the personal representatives, heirs and assigns of the respective parties hereto.

"Executed this 3rd day of December, 1926."

It is clear that, under the terms of the contract of December 3, 1926, as a prerequisite to the return of the quitclaim deed to the appellants, the appellants were required to pay to respondents, within six months, $16,955, which respondents agreed to pay to save the property. The following provision of the second agreement manifestly means just that:

"Whereas, there still remains to be paid for the construction of the said building the approximate sum of sixteen thousand eight hundred fifty-one and 49/100 dollars ($16,851.49); [Appellants concede that the amount is $16,955]

"Now, THEREFORE, In consideration of the said party of the first part obtaining sufficient finance by the use of the said property as security, or otherwise, and

paying all of the said claims now outstanding against the said property, and in addition thereto any sums whatsoever necessary for the construction, repair, maintenance, operation, taxes, insurance, payments on indebtedness or any sum for any other purpose reasonably necessary for the preservation and operation of the said building, the said parties of the second part agree to deposit in the American Security Bank of Vancouver, Washington, in escrow, a quitclaim deed conveying all of the right, title and interest of the said William C. Miller and Anna M. Miller, husband and wife, the same being an undivided one-half (½) interest, to the said party of the first part in and to the said tract of land hereinabove described, conditioned, however, as hereinafter set out.

"Now, if the said parties of the second part, or any one of them, shall on or before six months from the date hereof have paid to the said party of the first part all the money, or moneys, that he may have advanced, or for which he may have obligated himself, for the construction of the said building in excess of the contract price of construction as hereinabove set out, and as modified, by the furnishing of extras not contemplated or covered by the original plans and specifications, if any such extras have been furnished, and shall pay to him one-half (½) of all the income of the said building which may have been used to that date for the said purpose, together with interest thereon at the rate of seven per cent (7%) per annum, or at the rate paid by him and payable at such time, and shall further assume and agree to pay any indebtedness upon the property placed thereon for that purpose, then the quitclaim deed above referred to shall be returned to the grantors and held for naught, otherwise it shall be delivered by the said American Security Bank to the said party of the first part and become absolute."

There is no allegation by appellants that they ever made demand on the escrow agent for the deed. Failure to comply with the foregoing provision vested in the respondents the right to receive the deed and place same of record. No issue of material fact is presented

by the pleadings. The appellants failed to allege compliance with the terms of the contracts. The respondents are entitled to judgment on the pleadings. We concur in the view expressed by the trial court, whose memorandum opinion reads, in part, as follows:

"While there is considerable discussion concerning the contract as a whole, it appeals to the court that the only question to be decided is as to the interpretation of one certain paragraph in the last contract entered into between plaintiff and defendant. This paragraph is the one appearing at the top of page 3 of Exhibit B attached to the answer. It is contended by the defendant that, before plaintiff can come into a court of equity and ask for return of the quitclaim deed delivered by the American Security Bank to the defendants, they must make a full accounting and comply strictly with the provisions of the second contract entered into.

"There is nothing in the complaint nor in the reply which shows that the plaintiff has complied with all of the provisions of the second contract. The paragraph to which I first referred says, in speaking of expenditures, 'And if the same have been advanced by the said party of the first part from other sources, then to repay their proper proportion thereof, together with interest.'

"Further the contract says that the plaintiff shall assume and agree to pay all obligations then outstanding for any of the said purposes. Now, before the plaintiff can prevail, he must first allege a compliance with these provisions of the contract. Taking the contracts as a whole, it seems to the court that the plaintiff has not shown a compliance upon his part with the various terms of the contracts and cannot maintain a suit in equity. The first requisite of any such action is a showing of full compliance upon the part of plaintiff, and this must be first alleged in their pleadings and then, of course, sustained by proof. As far as the pleadings now go I cannot but say that defendant had a perfect right to receive the quitclaim deed from the bank, and further I must hold that the complaint, as

amended by the reply, does not show that plaintiff is entitled to the relief asked for.''

The final judgment on the motion for judgment on the pleadings has the same effect as a final judgment rendered on demurrer. 14 Stand Proc. 957.

The judgment is affirmed.

PARKER, FULLERTON, FRENCH, and MAIN, JJ., concur.