JAMES R. MORFORD v. BELLANCA AIRCRAFT CORPORATION, a corporation of the State of Delaware.

BELLANCA AIRCRAFT CORPORATION, a corporation of the State of Delaware, v. JAMES R. MORFORD.

(TWO CASES)

*(April 27, 1949.)*

CAREY, J., sitting.

*Thomas Cooch* for James R. Morford.

*S. Samuel Arsht* (of Morris, Steel, Nichols and Arsht) for Bellanca Aircraft Corporation.

132

CAREY, Judge.

The first question is whether Bellanca's pleadings will support judgments in its favor because it failed to negative all the exceptions contained in the regulations. Those pleadings, for example, do not aver that Bellanca had more than eight employees at the time, although they do contain statements indicating that Morford's position was a newly created one for which no salary had ever been approved and that there was no known salary rate prevailing for similar job classifications within the local area. *Thacker v. American Foundry et al.* 78 *Cal.App.2d* 76, 177 *P.2d* 322 and *Kalina v. Gary Jr., Inc., Sup.,* 55 *N.Y.S.2d* 757, are cited as authorities for this contention. Regardless of the rule applicable in other jurisdictions, I am of the opinion that the pleadings in this case should be governed by the principles discussed in *Connell v. Delaware Aircraft Industries, Inc.,* 5 *Terry* 86, 55 *A.2d* 637. The numerous exceptions to salary controls are scattered all through the regulations. See Cumulative Supplement to the Code of Federal Regulations (1944) page 8672, etc. They are not to be found in the statute itself or in the Presidential Executive Orders. It cannot be held that the various exceptions constitute "an intrinsic part of the clause which gives the action or grants the right" so as to make it impossible to declare on the clause directly without showing and denying the exceptions. Accordingly, I hold that Bellanca's pleadings are not defective in this regard.

The second question is whether the salary agreement between the parties was illegal and void ab initio or merely unenforceable during the effective period of the Act. In a number of cases, Courts have refused to honor contracts made in violation of the regulations promulgated under the Act upon the ground that the contract seeks to do something expressly prohibited by Federal law, thereby rendering the contract illegal. Examples are *Wernhardt v. Koenig, (D.C.)*, 60 *F.Supp.* 709; *Claude S. Bennett, Inc. v. Bollinger, 72 Ga.App.* 531, 34 *S.E.2d* 563; *Kells v. Bontross,* 184 *Misc.* 206, 53 *N.Y.S.2d* 734; *Traitell v. Livingston,* 269 *App.Div.* 997, 59 *N.Y.S.2d* 158. The words of Justice Shientag in the Kells case, supra [184 Misc. 206, 53 N.Y.S.2d 735], are very appropriate: "The violation of the statute and of the orders made pursuant thereto is made a criminal offense, punishable by prison or fine or both. The statute and the orders do not state specifically that an agreement made in violation of their provisions is unenforcible, hence the plaintiff argues that the only penalty for violation is for the criminal offense. The plaintiff is wrong. The court will not draw any such subtle distinctions in construing statutes so directly related to the war effort. Any agreement for an unapproved not enforcible in the courts. Those consequences are implicit from the very nature of the statute and the orders issued thereunder. Denial of the relief is in direct conformity with the requirements of public policy, and is a mostappropriate individual punishment for violation. The employee is not deprived of his right to sue for the amount of his former wage. He cannot come into court, however, and recover the amount of the unlawful increase. To permit him to do so would in effect amount to judicial sanction for the commission of what is made a criminal offense."

Courts have likewise held that the termination of salary controls did not convert the unenforcible contract into an enforcible one. *In re Pringle Engineering* & *Mfg. Co., (7Cir.),* 164 *F. 2d* 299. This conclusion is in harmony with the majority rule on the sub-

ject of illegal contracts where the illegality is later removed. 12 Am.Jur. 660; 2 Restatement of Contracts, Sec. 609; *Fitzsimons·v. Engle Brewing Co.*, (3 *Cir.*) 107 *F.2d* 712, 126, *A.L.R.* 681; *Van Meter v. Wilkinson,* 187 *Md.* 492, 50 *A.2d* 557. Salary controls were terminated in 1946 by Presidential Executive Order No. 9801, 50 U.S.C.A.Appendix, § 965 note, which contained a savings clause as follows: "Except that as to offenses committed, or rights or liabilities incurred, prior to the date hereof, the provisions of such Executive orders and regulations shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, ·or offense".

Even if it be conceded that this savings clause is inapplicable and that the present case should be governed by general law (since Congress had provided for the automatic termination of the act on June 30, 1947 without a savings clause), Morford's rights are no different. We must look at the contract and apply to it the law as it existed in 1943.

█ The next question deals with the contention that the compensation did not require the approval of the War Labor Board on the ground that Morford was not an employee of Bellanca while serving in his capacity as Secretary of the Board. He was a director and any compensation paid him for attendance at the Board's meetings in his capacity as a director required no approval under any regulation which has been called to my attention. The mere fact that he was a director did not, of course, prevent him from being an employee as well. The work which he agreed to do as Secretary of the Board consisted in taking notes of what transpired at meetings of the directors, preparing the minutes and mailing them to the other directors for approval. This work was not part of his usual duties as a director. Actually it had been done by him previously when he was Secretary of the company. Without undertaking to point out the differences between a director and an employee, I hold that Morford was ac-

tually an employee with respect to his services as Secretary of the Board.

██ ██ The next contention is that proceedings "before the various Federal Agencies were ex parte as to him and, therefore, void for the lack of procedural due process under the Fifth Amendment to the Federal Constitution". He does not question the reasoning of cases like *Employers Group of Motor Freight Carriers v. National War Labor Board,* 79 *U.S.App. D.C.* 105, 143 *F.2d* 145, and *United Brick & Clay Workers v. Robinson Clay Product Co., (D.C.),* 64 *F.Supp.* 872, which have upheld the constitutionality of the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 961 et seq. against certain contentions. He points out, however, that none of the decided cases have passed upon the particular point raised by him, which is that his constitutional rights were invaded because he was not given notice and opportunity to be heard by the general agencies which acted upon the applications filed by Bellanca. The pleadings show fairly clearly that he made every reasonable effort to obtain a hearing. In fact, the ruling of March 18, 1944 holding that the matter was not within the jurisdiction of the Commissioner of Internal Revenue was apparently the result of the petition which he filed. Moreover, although the Regional War Labor Board informed him that he had no standing to appeal its decision, the Case Review Section apparently did review the matter upon his application and affirmed the decision of the inferior board on March 10, 1945.

Assuming, however, that he was not given notice and opportunity to be heard, were the proceedings thereby rendered invalid? The right to contract concerning wages to be received or paid is a part of the liberty of an individual as well as a property right and is undoubtedly protected by the due process clause. It is not an absolute right, however, but is subject to reasonable regulation in the interest of the public welfare. 16 *C.J.S., Constitutional Law,* § 689, page 1441. It seems obvious that the right is one which may be properly regulated when the regulation is fairly

calculated to promote the carrying on of a war and the prevention of great monetary inflation invariably connected therewith. By analogy, the truth of this is demonstrated in *Highland v Russell Car & Snowplow Co.*, 279 *U.S.* 253, 49 *S.Ct.* 314, 73 *L.Ed.* 688, wherein the Supreme Court was dealing with the fixing of coal prices during the First World War. Certainly, in war times, some rights of individuals must give way to the public welfare.

█ It is not difficult to understand why the Stabilization Act of 1942, the Presidential Orders thereunder and the various regulations concerning salaries contained no provision for notice, hearing or appeals by individual employees. Unquestionably it was foreseen that those Boards would be obliged to examine literally thousands of applications for wage increases. If they had been obliged to hold hearings or grant appeals upon application of individual employees, their task would have been stupendous beyond imagination. Assume that a request for wage increases were to be asked by an employer for all of his employees. Assume further that they were given notice of the application and all attended the hearings and later took appeals. The resulting loss of man-hours would have been a distinct detriment rather than a help to the war effort. Even if we concede that individual rights were to some extent impaired by this failure to provide for notice and hearing, that impairment was warranted by the actual public needs of the times. *Cf. Kittrell v. Hatter*, 243 *Ala.* 472, 10 *So.2d* 827.

In Morford's pleadings, there is a suggestion that Bellanca's applications for approval were not filed in good faith. No facts are before me to justify such an inference, nor is the matter touched upon in the briefs. It will therefore be ignored.

For the foregoing reasons, I am of the opinion that Bellanca's motion for summary judgment in No. 92 must be granted.

█ Consideration of No. 182 involves two additional points. It is Morford's contention that Bellanca's action to recover excess

payments over five hundred dollars is barred by our statute of limitations, Code, Section 5129 as follows: "No action upon the case shall be brought after the expiration of three years from the accruing of the cause of such action".

The argument is thus stated in Morford's brief: "If the sums claimed were paid Morford illegally, or contrary to the provisions of law for lack of National War Labor Board approval, then Bellanca, with each such payment, had an immediate right to their return. The last such payment was well over three years and six months prior to the commencement of No. 182". It is sufficient answer to this contention that the statute does not begin to run until a cause of action exists capable of being sued on forthwith. *Keller v. President, Directors and Company of Farmers Bank,* 2 *Terry* 471, 24 *A.2d* 539. Under no theory of law did Bellanca have any immediate right of action to recover anything from Morford until a competent Board had acted. The first disapproval by the Bureau of Internal Revenue proved to be nullity for lack of jurisdiction and Bellanca's demand for a refund in October 1943 was therefore premature. Any right of action of Bellanca did not accrue prior to the disapproval by the Regional War Labor Board in July 1944. This was less than three years before the commencement of the present suit.

A final point bearing upon Bellanca's right to recover these overpayments is one which has not been discussed by counsel but which is brought up by the Court sua sponte. The authorities are practically unanimous in saying that, where parties are in pari delicto, a Court will leave them where it finds them. Money paid upon an illegal agreement may not be recovered. Certain exceptions exist but they are not applicable to this case. If this contract offended the law ab initio, the Court will lend its aid to neither party. *Mancourt-Winters Coal Co. v. Ohio & Michigan Coal Co.* 217 *Mich.* 449, 187 *N.W.* 408; *New York & Pennsylvania Co. v. Cunard Coal Co.,* 286 *Pa.* 72, 132 *A.* 828.

[9, 10] Bearing in mind the ultimate purpose of the Act which was to aid the war effort, I cannot conceive that a contract to pay a certain salary with an agreement to refund in the event of disapproval ought to be held illegal. The creation of a new position and the actual occupancy of that position could hardly be expected to wait until the Labor Board had acted on the amount of salary to be paid; yet, few people would have been willing to enter upon a new job unless they actually received prompt payment for their services without waiting for perhaps months for the Labor Board to act. In other words, the Act must be construed to permit the making of such a conditional wage agreement, otherwise it would have defeated its own purpose.

On the other hand, assuming Morford's version of the contract to be correct, i. e., that there was no agreement to refund any excess payments, little argument is needed to show that the contract was void ab initio. Section 5 of the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 965, provided that no employer shall pay and no employee shall receive wages or salaries in contravention of the regulations promulgated by the President under this Act. By Executive order No. 9250, 50 U. S. C. A. Appendix § 901 note, no increase in wage rates was authorized unless the National War Labor Board had approved it. Penalties were imposed for the violation of the statute. Under the regulations, salaries for newly created jobs were considered increases. I cannot assume that the parties were contracting in ignorance of the act. Indeed, the record shows that the earlier contract between the two whereby Morford was retained as General Counsel was submitted to the proper agency and its approval obtained. This fact was known to both parties. Even if it be true that one or both of the parties believed the contract was not within the scope of the act and the regulations, the situation is unchanged. In the absence of a definite promise to repay, the contract violated the letter and spirit of the act. Under those circumstances, no agreement to refund will be implied.

I am, therefore, of the opinion that all motions now before me with respect to No. 182 must be denied and the issue of fact tried. The sole issue for trial, however, is whether or not the contract of employment included an agreement to refund the amout of any excess payments over and above the sum eventually approved, upon the happening of such event.

Orders in accordance with the foregoing opinion will be signed.